(No. 26179.—

THE PEOPLE *ex rel.* John Toman, County Collector, Appellee, *vs.* W. A. PICKARD, Appellant.

*Opinion filed Sept. 15, 1941—Rehearing denied November 18, 1941.*

Adelbert Brown, for appellant.

Thomas J. Courtney, State's Attorney, (Marshall V. Kearney, Jacob Shamberg, and Brendan Q. O'Brien, of counsel,) for appellee.

Mr. Chief Justice Murphy delivered the opinion of the court:

The appellee, as county collector of Cook county, applied to the county court of that county for a judgment for delinquent real estate taxes assessed for the year 1938. Various objections were filed but on this appeal the only one for review pertains to the value on which appellant's real estate was assessed. Revenue being involved the appeal was direct to this court.

The objection filed in the county court charged that the method of assessment of land values as adopted by the assessor of Cook county in making the quadrennial assessment in 1935, which valuation was used for 1938, destroys uniformity in taxation and that thereby section 1 of article 9 of the State constitution, and the equal protection and due process clauses of the fourteenth amendment to the Federal constitution, are violated.

The pertinent part of the pleadings out of which the specific objection arises is that, in fixing the value for assessment purposes, the assessor of Cook county took the full value of the improvements and the full value of the land, then debased the value of the improvements to seventy per cent, but did not debase the land value a like amount. It is alleged that the two values, to-wit: Seventy per cent of the value of the improvements and one hundred per cent of the land value were adopted as the full valuation of the respective items of property and that to this valuation the assessor applied the equalizing factor of thirty-seven per cent and adopted the result as the taxable value. It is claimed that by this method the buildings on the real estate were, in fact, debased to 25.9 per cent (thirty-seven per cent of seventy per cent) of the full cash value, whereas the land values were debased to thirty-seven per cent of the full cash value.

The evidence does not support that part of the objection which alleges that the assessor, in determining the value of the improvements, debased the full fair cash value thirty per cent. In arriving at a taxable value for the improvements, the assessor adopted the reproduction cost method. The cost of reproducing a building as of April 1, 1935, was ascertained by determining the cost of the necessary labor and material as of that date. Such reproduction cost was then debased thirty per cent and other deductions, such as depreciation and obsolescence, were applied. No question is raised as to the latter ele-

ments of deduction. It will be observed that the thirty per cent debasing factor was applied to the reproduction cost and not to the full cash value as was alleged in the objection. After debasing the reproduction cost thirty per cent and deducting items of depreciation and obsolescence, the remainder was taken to be the full fair cash value of the building. To such full fair cash value the equalizing factor of thirty-seven per cent was applied the same as it was applied to the full fair cash value of the land. The results thus obtained in each instance were adopted as the value for assessment purposes.

Some of the witnesses in referring to the thirty per cent debasement of the reproduction cost of the building stated it was applied because there was a lack of marketability of the buildings. Appellant's theory is that if the reproduction cost of the buildings was subject to a thirty per cent debasement because of lack of marketability, then the fair cash value of the real estate should be debased a like amount for the same reason. Such contention does not question the conclusion of the taxing officials that the fair cash value of the buildings was less than the reproduction cost. Appellant says that the use of such method destroys equality in taxation for the reason that vacant lots, and lots with buildings of small value, would not receive as great a debasement allowance as a lot or tract with extensive improvements.

The law in force when the valuation was determined required that the value of the lands and the improvements should be separately fixed and that such valuation should be the fair cash value estimated at the price it would bring at a fair voluntary sale in the course of trade. Sections 14 and 18 of the Revenue act of 1898. State Bar Stat. 1935, chap. 120, pars. 325, 329.

It is recognized that taxing officials of the State do not generally take the fair cash value of real estate as the final value for the extension of taxes but accept a fixed per-

centage of the fair cash value of each item of property as an equalizing factor. This court has held many times that such factor should be uniformly applied as to all property within the same jurisdiction. (*People's Gas Light and Coke Co.* v. *Stuckart,* 286 Ill. 164; *People* v. *Orvis,* 301 id. 350; *Bistor* v. *McDonough,* 348 id. 624.) However, the debasing of the reproduction cost of a building by a fixed percentage, when done for the purpose of arriving at its fair cash value, is quite different from the equalizing of values by taking as an equalizing factor a fixed percentage of the fair cash value.

A deputy assessor of Cook county testified that at the time the debasement figure of thirty per cent was used it was considered by the assessor that the aggregate cost of the necessary labor and material to reproduce a building as of April 1, 1935, exceeded the sale price of the building when completed by thirty per cent of the reproduction cost. The method of computation adopted was but a means the assessor used to arrive at the fair cash value of the building. It is obvious that in determining the fair cash value of the real estate the assessor could not start from a reproduction cost, for no such factor exists in the valuing of real estate. On the other hand, there would be factors so related to the fair cash value of land that it would be necessary for the assessor to consider them in ascertaining its fair cash value, and yet such matters would be outside the inquiry in fixing the fair cash value of the building.

The principle of law upon which the rule of uniformity in taxation stands does not require that the taxing officials, while engaged in the fixing of the full fair cash value of property, shall adopt the same rules as to all classes of property. They are permitted to exercise their judgment, formulate and apply such rules in the valuing of the various items of property and the classes thereof as will best enable them to arrive at the fair cash value of the property which is the subject of assessment.

Appellant refers to the fact that in previous years the preceding assessor did not employ the thirty per cent debasement factor in assessing the buildings, and argues that such difference of method of assessing establishes an arbitrary and unwarranted action by the latter assessor in making the quadrennial assessment for 1935. It is well settled that mere differences of opinion by the taxing officials as to valuations of property for taxable purposes do not justify interference on the part of the courts. (*People* v. *St. Louis Bridge Co.* 357 Ill. 245.) For the same reason, the fact that an assessor employed a method or rule for valuing a class of property which was not used by his predecessor in valuing the same character of property is not, in itself, justification for the court's interference. The method of procedure which the taxing officials employ in fixing the fair cash value of property, generally, is not a subject of judicial inquiry if the method and procedure adopted results in a fair valuation being placed on all property so that the burden of taxation will be proportionately distributed according to valuation upon all property in that jurisdiction.

The county court did not err in overruling appellant's objection and the judgment is affirmed.

*Judgment affirmed.*